UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

FELIX Y.,

    *Plaintiff*,

v().

FRANK BISIGNANO, COMMISSIONER OF SOCIAL SECURITY,

    *Defendant*.

Case No. 3:24cv782 (MPS)

## ORDER ON RECOMMENDED RULING

In this social security benefits case, the Administrative Law Judge ("ALJ") found that the Plaintiff, Felix Y., was not disabled under the Social Security Act from December 25, 2021 through April 21, 2023, and therefore denied his application for supplemental security income for this period. The Plaintiff filed this action seeking judicial review of the ALJ's decision. On July 30, 2025, Magistrate Judge Maria Garcia issued a recommended ruling recommending that the Plaintiff's motion to remand the ALJ's decision be granted and that the Commissioner's motion to affirm the ALJ's decision be denied. ECF No. 28. Specifically, the Magistrate Judge held that the ALJ's finding that the Plaintiff retained the residual functional capacity ("RFC")[1] to perform medium work was not supported by substantial evidence because it failed to account for the plaintiff's back pain. ECF No. 28. The defendant Commissioner has filed an objection on the grounds that (1) the recommended ruling improperly holds that the ALJ erred by determining the Plaintiff's RFC without a supporting medical expert opinion and (2) the ALJ's RFC finding is supported by substantial evidence. ECF No. 29.

---

[1] "RFC is the most the [applicant] can still do despite [their] limitations that affect what [they] can do in a work setting." *Rubin v. O'Malley*, 116 F.4th 145, 148 n.1 (2d Cir. 2024).

I must review "de novo any part of the magistrate judge's disposition that has been properly objected to." Fed. R. Civ. P. 72(b)(3). I assume familiarity with the record, Magistrate Judge Garcia's recommended ruling, the Commissioner's objection, and the Plaintiff's response. For the reasons that follow, I agree with Judge Garcia's conclusion that the RFC is not supported by substantial evidence and accordingly, I overrule the Commissioner's objection and adopt the recommended ruling.

### *Determination of the RFC*

An ALJ is responsible for determining a claimant's RFC, 20 C.F.R. § 416.946(c), based on all the relevant medical and other evidence. 20 C.F.R. § 416.946(a)(3). "An ALJ's decision must be supported by substantial evidence[2] - but there is no blanket requirement that such a decision must be supported by a congruous medical opinion for it to meet that evidentiary standard." *Rubin v. O'Malley,* 116 F.4th 145, 155 (2d Cir. 2024). In *Tankisi v. Comm'r of Soc. Sec.*, 521 F. App'x 29 (2d Cir. 2013), the Second Circuit held that a medical source statement is not required where "the record contains sufficient evidence from which an ALJ can assess the petitioner's residual functional capacity." *Id.* at 34. In that case, the Second Circuit held that remand was not warranted because the medical records were "quite extensive," "voluminous," and included "an assessment of [the claimant's] limitations from a treating physician" sufficient to permit the ALJ to make an "informed finding." *Id.* But see *Guillen v. Berryhill*, 697 F. App'x 107, 108–09 (2d Cir. 2017) (remand warranted because "[u]nlike *Tankisi*, the medical records obtained by the ALJ do not shed any light on [the claimant's] residual functional capacity.... The medical records discuss [the claimant's] illnesses and suggest treatment for them but offer no insight into how her impairments

---

[2] "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (internal quotation marks omitted).

affect or do not affect her ability to work....")  The determination of whether substantial evidence exists to support an ALJ's decision "is an inquiry that, by its nature, turns on the particular facts of a case." *Rubin,* 116 F.4th at 155 n.9.

### *Substantiality of the Evidence*

Here, the ALJ determined that the Plaintiff retained the residual functional capacity to perform medium work.  R. 492-501.[3]  Medium work involves "lifting no more than fifty pounds at a time with frequent lifting or carrying of objects weighing up to twenty-five pounds and standing for approximately six hours out of an eight-hour work day." *Urtz v. Acting Comm'r of Soc. Sec.*, 159 F.3d 1349, 1998 WL 487083, at *1 (2d Cir. June 11, 1998); 20 C.F.R. § 416.967(c); SSR 83-10, 1983 WL 31251, at *6 (S.S.A. Jan. 1, 1983).

In support of her conclusion as to the Plaintiff's physical ability, the ALJ cited the opinions of DDS State Agency Medical Consultants Dr. Gerrish and Dr. Zhang, each of whom opined that the Plaintiff retained the capacity to perform medium work.  (R. 572-73, Ex. 2A (Dr. Gerrish's opinion); R. 581, Ex. 3A (Dr. Zhang's opinion)).  As Judge Garcia observed, Dr. Gerrish's opinion pre-dated the onset of the Plaintiff's back pain on December 25, 2021.  R. 573.  And Dr. Zhang's opinion, although dated after the onset of the Plaintiff's back pain, did not address it.  R. 578-81.  Judge Garcia found that the opinions of Drs. Gerrish and Zhang as to the plaintiff's physical RFC "did not constitute relevant medical opinion evidence as to the impact of the Plaintiff's back pain on his RFC- specifically, his ability to lift and carry." ECF No. 28 at 8.  The Commissioner objects to Judge Garcia's evaluation of this evidence on the grounds that the opinions are not stale.  ECF No 29 at 5.

---

[3] "R." refers to the Certified Administrative Record filed at ECF No. 12. The pagination refers to the pagination on the bottom right-hand corner of the record, as opposed to the ECF pagination.

A medical opinion does not become stale just because additional more recent material is submitted into the record. *Camille v. Colvin*, 652 F. App'x 25, 28 n.4 (2d Cir. 2016). Rather, "a medical opinion may be stale if subsequent treatment notes indicate a claimant's condition has deteriorated." *Gina D. v. Comm'r of Soc. Sec.*, 2021 WL 1117023, at * 4 (W.D.N.Y. Mar. 24, 2021) (quotation marks and citations omitted). *See Hawkins v. Colvin*, 2016 WL 6246424, *3 (W.D.N.Y. 2016) (consultative examiner's opinion was stale where it was issued before a plaintiff's degenerative disc disease became symptomatic).

Magistrate Judge Garcia did not err. The Plaintiff's back pain constitutes a change in his physical condition not addressed in the functional assessments of Drs. Gerrish and Zhang. On December 25, 2021, the plaintiff presented to the Emergency Department complaining of back pain. R. 3074. Tenderness was noted; range of motion was normal. R. 3078. The clinical impression was "chronic right sided low back pain without sciatica." R. 3079. He was administered Toradol, R. 3086, and prescribed lidocaine patches and Flexeril. R. 3076. The ER staff recommended to his PCP that the Plaintiff undergo imaging of his lower back. R. 3079. The Plaintiff's complaints of back pain continued. See R. 3215-16 (1/7/22 note from APRN Moorer that plaintiff reported "persisting [back] pain which radiates down the right leg" and that the pain is worse with "standing from prolonged sitting, walking, and bending." Neurontin was prescribed and the lidocaine patches continued); R. 3190-91 (2/2/22 note stating plaintiff complained of back pain for which he was prescribed medication and that he was "unable to identify reason for pain"); R. 3470-71 (5/19/22 note from APRN Moorer noting diagnosis of chronic right-sided low back pain and that plaintiff states "he is still having the pain"); R. 3727 (10/17/22 note indicates "increasing" lower back pain that is worse with "rising from sitting." "He also has pain with prolonged standing or walking. No trauma reported."); R. 3815 (12/6/22 note from APRN Moorer

that plaintiff suffered from chronic right-sided low back pain; Neurontin discontinued due to side effects, and Naproxen prescribed); R. 3807, 3810 (1/19/23 progress note from APRN Moorer that plaintiff took Naproxen for his back pain, which "helps." Her notes state under "assessment and plan," that he is "doing okay," to "continue naproxen," and followup in 6 months.) Because the RFC assessments from the Drs. Gerrish and Zhang did not consider evidence of this change in the Plaintiff's condition, Magistrate Judge Garcia did not err in concluding that the opinions did not constitute substantial evidence in the support of the RFC found by the ALJ.

In addition to the opinions of the agency consultants, the ALJ cited as support for the RFC "records from Cornell Scott Hill Health not[ing] no weakness, normal coordination, a normal gait, and no sensory deficit." R. 495 (listing three exhibits).[4] But these predate the onset of the Plaintiff's back pain. In addition, I note that the record contains medical records dated after the onset of the plaintiff's back pain that similarly note "5/5 motor, sensation intact" (R. 3557, 10/21/22 ED note) and "Musculoskeletal: General: No deformity. Normal range of motion." (R. 3699, 10/24/22 ED note). In any event, these notations fall short of constituting substantial evidence that the plaintiff can meet the exertional requirements of medium work. *See Kurlan v. Berryhill*, 2019 WL 978817, at *4 (D. Conn. Feb. 28, 2019) (finding that phraseology such as "full motor strength" and "normal gait" does not necessarily equate to "intact ... functional abilities of the specific nature detailed in the RFC formulation—at least not without a supporting medical opinion that says so") (internal quotation marks and ellipses omitted).

---

[4] One of the exhibits cited, "10F/8," pre-dates the plaintiff's onset of back pain, (see R. 3330, record dated 5/18/21 noting "no weakness, normal coordination, normal gait") and another exhibit, identified in the opinion as "8F/8, 11" does not say what the ALJ's decision says it does. R. 3286. The record contains other such pre-onset notes. See also R. 2584 (5/25/21 note stating "5/5 strength bilaterally", "gait normal"); R. 969 (10/11/21 YNHH Outpatient Stroke Center Note that knee flexion and shoulder abduction "5/5", and that plaintiff's gait was "steady" with "normal steps, base, arm swing, and turning").

The ALJ also stated that "[m]agnetic resonance imaging of [the plaintiff's] cervical spine shows no deformity (Exhibit 6F)." R. 499. The plaintiff's medical record includes various MRI and CT head and cervical scans for pre-and post-surgical assessment of the plaintiff's removal of a meningioma, see, e.g., R. 1104 (5/14/21 MRI), to determine whether the plaintiff suffered a stroke (R. 2669-70), and in response to a fall (R. 3630.) They were of the head and neck rather than the plaintiff's lumbar spine and some did indicate some degenerative changes. See R. 2693-2694 (An 8/7/21 CT scan of the plaintiff's head and neck performed because of concerns the plaintiff had suffered a stroke revealed "multilevel degenerative changes of the spine."); R. 3630, (10/21/22 CT scan of plaintiff's head and cervical spine showed "There is no compression deformity or evidence for acute fracture or subluxation. The atlanto-occipital and atlanto-axial articulations are intact. Note is made of multilevel degenerative disc disease changes, most prominent at C4-C5."). In any event, these scans are the type of raw data that, without more, fail to illuminate the plaintiff's physical abilities. Lastly, the ALJ stated that "[t]reatment records show claimant instructed to exercise. (Exhibit 18F)." R. 499. It's unclear how these instructions advance the Commissioner's argument.

Taken together, the evidence marshaled by the ALJ fails to support the notion that the Plaintiff can perform work at a medium level. The Court's own independent review of the administrative record also fails to reveal such evidentiary support. Unlike the record in *Tankisi*, the medical evidence here is not sufficiently comprehensive to permit an informed finding that the Plaintiff can satisfy the physical requirements of medium work, which include lifting up to fifty pounds. Nor do the Plaintiff's statements and reports of his daily activities provide such support. See R. 531 (Plaintiff testified at the hearing that he suffered from pain in his lower back, especially when lifting, that he "can't stand long" (R. 532), has difficulty doing laundry and vacuuming, and

that his brother does it for him (R. 534), and that his daughter does his grocery shopping and "she lifts it up for me in the house." (*Id.*))  Considering the record as a whole, I find that the record does not contain substantial evidence to support the ALJ's RFC finding.

For these reasons, I OVERRULE the Commissioner's objection (ECF No. 29) and ADOPT the Recommended Ruling (ECF No. 28).  The Clerk is instructed to REMAND the case.

IT IS SO ORDERED.

/s/
Michael P. Shea, U.S.D.J.

Dated: Hartford, Connecticut
September 17, 2025